SIXTH DIVISION

                                               March 13, 1998 

No. 1-95-1864 

NEPTUNO TREUHAND-UND                     )   Appeal from the 

VERWALTUNGSGESELLSCHAFT MBH, and FESAG   )   Circuit Court of 

FINANCIAL ENGINEERING SERVICES, GMBH,    )   Cook County 

                                         )

            Plaintiffs-Appellants,       )

                                         )

v.                                       )

                                         )

PATRICK H. ARBOR and CHICAGO BOARD OF    )             

TRADE,                                   )   Honorable 

                                         )   Gary Brownfield, 

            Defendants-Appellees.        )   Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

This case is brought on appeal from a May 19, 1995, order of the circuit court of Cook County, dismissing plaintiffs' second amended complaint with prejudice, pursuant to section 2-615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-615 (West 1994).

On appeal, plaintiffs-appellants contend that the trial court erred, as a matter of law, in determining that: (1) defendant- appellee Patrick J. Arbor had no duty to disclose to plaintiffs all material facts known to him relating to Thomas J. Farrell's fitness to be a commodities futures trader; (2) plaintiffs unreasonably relied on Arbor's letter of introduction; and (3) plaintiffs' second amended complaint failed to state a cause of action for negligent misrepresentation pursuant to section 2-615 of the Illinois Code of Civil Procedure.

The following are the pertinent facts contained in the record.  Plaintiffs, FESAG Financial Engineering Services (FESAG) and Neptuno Treuhand-Und Verwaltungsgesellschaft (Neptuno), are both companies based in Germany.  In the summer of 1993, Thomas J. Farrell (Farrell) contacted Hans Peter Dietrich (Dietrich), principal owner of FESAG, regarding possible employment by FESAG as a commodities futures trader.  In August 1993, FESAG hired Farrell as a trader, on the express condition that he provide a letter of reference from Patrick H. Arbor (Arbor) attesting to his experience, competence and integrity as a commodities futures trader.  In response to FESAG's request, Farrell solicited a letter of recommendation from Arbor, chairman of defendant-appellee Chicago Board of Trade (CBOT).  The letter, addressed to Dietrich, and dated August 27, 1993, stated in its entirety:

"I have known Tom Farrell personally for over 13 years.

He was an active full member of the Chicago Board of 

Trade.  Tom has always proven to be an intelligent in-

dustrious and innovative young man."

This letter was delivered to FESAG upon Farrell's arrival in Germany on September 2, 1993.

FESAG agreed to allow Farrell to trade German security futures on behalf of FESAG.  Farrell agreed that he would not have more than 10 futures contracts open at any one time.  Farrell began trading on September 10, 1993.  He was supervised by a FESAG employee who monitored Farrell's trading activities.  On September 15, 1993, Farrell was left unsupervised for approximately two hours.  During this brief time, Farrell put himself and FESAG into a position with more than 5,900 futures contracts open.  As a result of Farrell's activities, FESAG incurred losses of approximately $5 million.  A subsequent inquiry by FESAG to the National Futures Exchange revealed that on July 16, 1993, Farrell had entered into a consent order with the Chicago Futures Trading Commission (CFTC), under which Farrell was barred from trading his own account or any other account in which he had an interest on any futures exchange for two years.  In addition, FESAG's inquiry revealed that Farrell's floor broker registration had also been permanently revoked by the CFTC.

On April 4, 1994, plaintiffs commenced an action against Arbor and CBOT alleging that Arbor should have disclosed the disciplinary information about Farrell in his letter of recommendation.  The trial court dismissed plaintiffs' first and second amended complaints.  The first count of the second amended complaint alleged fraudulent misrepresentation, the second count alleged fraudulent concealment, and the third count alleged negligent misrepresentation.   After three failed attempts to plead a cause of action against Arbor and/or CBOT, plaintiffs moved the court to reconsider its dismissal or alternatively to enter a final order dismissing the second amended complaint with prejudice.  The trial court denied plaintiffs' motion for reconsideration and dismissed plaintiffs' second amended complaint with prejudice.  The trial court dismissed the second amended complaint under section 2-615 based on its finding that the letter contained no misstatements of fact and defendants owed plaintiffs no duty to reveal adverse information in a letter of reference because defendants and plaintiffs had no relationship with one another, and on the ground that plaintiffs' reliance was not justifiable.  

A section 2-615 motion for dismissal should not be granted unless it clearly appears that no set of facts could be proved that would entitle plaintiffs to recovery. 
Mt. Zion State Bank & Trust v. Consolidated Com
munications, Inc.
, 169 Ill. 2d 110, 115 (1995).  "In ruling on such motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered."  
Mt. Zion
, 169 Ill. 2d at 115.  We review such orders 
de novo 
(
Estate of Strocchia v. City of Chicago
, 284 Ill. App. 3d 891, 898 (1996)), and all well-pleaded facts and reasonable inferences are taken as true.  
Mt. Zion
, 169 Ill. 2d at 115. 

     The first issue on appeal is whether plaintiffs' complaint contained factual allegations sufficient to establish a cause of action for fraudulent misrepresentation.

Under Illinois law, the elements a plaintiff needs to plead and prove in a fraudulent misrepresentation complaint are: (1) a false statement of material fact; (2) knowledge or belief of the falsity by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance.  
Board of Education v. A, C & S, Inc.
, 131 Ill. 2d 428 (1989).  Further, the reliance on the part of the plaintiff must have been justifiable. 
Soules v. General Motors Corp.
, 79 Ill. 2d 282, 286 (1980).  

In the instant case, Arbor's letter of reference does not contain any false statement of material fact.  Arbor's letter states that: (1) he had known Farrell personally for over 13 years; (2) Farrell 
was
 an active full member of the Chicago Board of Trade; (3) and Farrell had always proven to be an intelligent, industrious and innovative young man.  Plaintiffs' complaint contained no allegations that Arbor did not know Farrell personally or that Farrell was not a member of the Chicago Board of Trade.  Defendants assert that Arbor's comments regarding Farrell's intelligence, innovativeness and industrious nature represent mere opinion and therefore cannot form the basis of an action of fraud, citing 
Soderland Brothers, Inc. v. Carrier Corp.
, 278 Ill. App. 3d 606, 620 (1995).  

"A representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact."  
Marino v. United Bank of Illinois, N.A.
, 137 Ill. App. 3d 523, 527 (1985) citing Restatement (Second) of Torts §538(A) (1977); see also 
Union Pacific R.R. Co. v. Village of
 
South Barrington
, 958 F. Supp. 1285 (N.D. Ill. 1997). 

The Restatement (Second) of Torts, section 538(A), provides:

"A representation is one of opinion if it expresses only 

(a) the belief of the maker, without certainty, as to the existence of a fact; or 

(b) his judgment as to quality, value, authenticity, or  other matters of judgment."  Restatement (Second) of Torts §538(A) (1977).        

The comment to this section provides:

"One common form of opinion is a statement of the maker's judgment as to quality, value, authenticity or similar

matters as to which opinions may be expected to differ. 

Thus the statement that an automobile is a good car is 

a relative matter, depending entirely upon the standard

set as to what is a good automobile and what is not, and 

it is a matter upon which individual judgments may be 

expected to differ.  The maker of a statement of this 

nature will normally be understood as expressing only his 

own judgment and not as asserting anything concerning 

horsepower,  riding qualities or any of the dozen other 

factors that would influence his judgment." Restatement (Second) of Torts §538(A), Explanatory Note, at 
83 (1977).    

  

Intelligence, innovativeness and an industrious nature are personal qualities and whether they exist in a given individual is a matter upon which individual judgment may be expected to differ.

In 
Continental Bank v. Meyer
, 10 F.3d 1293 (7th Cir. 1993), the court reviewed a suit between a bank and borrowers who had invested in a horse-breeding limited partnership.  There, the court held, "[t]he defendants also allege that the bank officers stated that the horses were (necessarily 'would be') of the highest quality, and that the partnership would be managed by competent general partners.  These statements are no more than opinion."  
Continental Bank
, 10 F.3d at 1299.  See also 
Nanlawala v. Jack Carl Associates, Inc.
, 669 F. Supp. 204, 207 (N.D. Ill. 1987) (statements that defendant futures trader had "expertise" was merely "puffing" and statement that defendant would "pick good trades" was also not actionable because it was merely a prediction of future investment success).

We hold that Arbor's comments regarding Farrell's intelligence, innovativeness and industrious nature represent mere opinion and, therefore, cannot form the basis of an action for fraudulent misrepresentation.       

After the trial court's dismissal of plaintiffs' original complaint and first amended complaint, which set forth only one cause of action for intentional  misrepresentation, plaintiffs' second amended complaint set forth claims for fraudulent concealment and negligent misrepresentation in addition to the claim for fraudulent misrepresentation.  Plaintiffs point out that in cases of fraudulent misrepresentation based on omission (fraudulent concealment) it has been held that:

"[i]n order to prove the concealment amount-

ed to a fraudulent misrepresentation the plain-

tiff must prove: (1) the concealment of a mat-

erial fact; (2) the concealment was intended to 

induce a false belief, under circumstances cre-

ating a duty to speak [citation]; (3) the inno-

cent party could not have discovered the truth 

through a reasonable inquiry or inspection, or 

was prevented from making a reasonable inquiry 

or inspection, and relied upon the silence as a

representation that the fact did not exist; 

(4) the concealed information was such that

the injured party would have acted different-

ly had he been aware of it; and (5) that re-

liance by the person from whom the fact was con-

cealed led to his injury."  
Stewart v. Thrasher
,

242 Ill. App. 3d 10, 16 (1993).

In applying this holding to the instant case, there is no question that the Arbor letter failed to disclose a material fact which, if known to plaintiffs, would have caused them to act  differently.  As to the requirement of "under circumstances creating a duty to speak,"  in Illinois, in order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak.  
Magna Bank v. Jameson
, 237 Ill. App. 3d 614, 618 (1992); 
Lidecker v. Kendall College
, 194 Ill. App. 3d 309, 317 (1990).  There is no duty to speak absent a fiduciary or other legal relationship between the parties. 
Magna Bank
, 237 Ill. App. 3d at 618;  
Warner v. Lucas
, 185 Ill. App. 3d 351, 355 (1989).  The burden of proving that a fiduciary relationship exists lies with the party seeking relief.  
Magna Bank
, 237 Ill. App. 3d at 618. 

Plaintiffs cite several cases in support of their position that defendants should be held liable for fraudulent concealment.  In five of these cases, 
Kinsey v. Scott
, 124 Ill. App. 3d 329 (1984), 
Tan v. Boyke
, 156 Ill. App. 3d 49 (1987), 
Stewart v.
 
Thrasher
, 242 Ill. App. 3d 10 (1993), 
Heider v. LeeWards Creative
 
Crafts, Inc.
, 245 Ill. App. 3d 258 (1993), and 
Mitchell v. Skubiak
, 248 Ill. App. 3d 1000 (1993), there was a buyer-seller relationship between the parties.  
City of Chicago v. American National Bank &
 
Trust Co.
, 233 Ill. App. 3d 1031 (1992), involved a landlord-tenant relationship.

Plaintiffs cite 
St. Joseph Hospital v. Corbetta Construction
 
Co.
, 21 Ill. App. 3d 925 (1974), as the leading Illinois case on "half-truths" for its holding that "a statement which is technically true as far as it goes may nevertheless be fraudulent, where it is misleading because it does not state matters which materially qualify the statement as made.  In other words, a half-truth is sometimes more misleading than an outright lie." 
St.
 
Joseph Hospital
, 21 Ill. App. 3d at 952-53.  However, the defendant in 
St. Joseph Hospital
 was a manufacturing firm that had made representations to a construction firm building part of a hospital that its paneling was not "flame rated." In fact the paneling had been tested and found to have a flame spread 17 times greater than the maximum allowed under the Chicago building code.  While there was no privity in the traditional sense, this court held the manufacturing firm liable for damages.  The defendant manufacturing firm did supply the defective paneling which was installed in the hospital.  No such relationship exists here.

Plaintiffs rely on 
Union National Bank & Trust Co. v.
 
Carlstrom
, 134 Ill. App. 3d 985 (1985), for its holding "[a] party may assume a duty to disclose information accurately by its conduct.  That clearly was the case here.  The bank voluntarily gave a detailed description of the Carlstrom's [sic] dealings with the Bank.  In so doing, it undertook a duty not to deliberately conceal or misrepresent."  
Union National Bank
, 134 Ill. App. 3d at 989.  In that case, the plaintiff was a bank customer, and more importantly, the allegedly misleading information concerned the Carlstroms' account and was very detailed.  This is not the case here.

In the instant case, plaintiffs admit that they had no prior relationship of any kind with Arbor and had no fiduciary relationship with the Chicago Board of Trade.  There were no prior or anticipated business dealings between either the Chicago Board of Trade or Arbor and FESAG.  In fact, the sole contact between the parties was Arbor's letter of reference.  Further, it was Farrell who asked Arbor for the letter of reference.  Based on the  failure of plaintiffs to allege that a special or fiduciary  relationship existed between plaintiffs and defendants, the trial court's dismissal of plaintiffs' fraudulent concealment claim must be affirmed. 

Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation, except that the defendant's mental state is different.  The defendant need not know that the statement is false.  His own carelessness or negligence in ascertaining its truth will suffice for a cause of action. For negligent misrepresentation, a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information.  
Board of Education v. A, C & S, Inc.
, 131 Ill. 2d 428, 452 (1989).

Defendants assert that Illinois law will not support a cause of action sounding in negligent misrepresentation for purely economic loss unless the misrepresentation is made by one who is in the business of supplying information for the guidance of others  in their business transactions, citing 
University of Chicago
 
Hospitals v. United Parcel Service
, 231 Ill. App. 3d 602 (1992), which relied on 
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69 (1982).

In 
Moorman
, our supreme court held that a manufacturer could not be held liable under a negligent misrepresentation theory for economic losses caused.  However, economic loss is recoverable "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations."  
Moorman Manufacturing Co.
, 91 Ill. 2d at 88-89.  
Rozny v. Marnul
, 43 Ill. 2d 54 (1969), held that purchasers of residential housing could recover against a surveyor for the negligently inaccurate representations of the survey that caused economic loss to the purchasers even though no privity of contract existed between the purchasers and surveyor.  Plaintiffs correctly point out that in considering the holdings in these cases, in 
Board of Education v. A, C & S, Inc.
, our supreme court said, "[w]e do not believe that 
Moorman
 and 
Rozny
 conclusively resolve the question of when and against whom a plaintiff may recover economic losses for a negligent misrepresentation."  
A, C & S, Inc.
, 131 Ill. 2d at 454.  Here, however, plaintiffs have failed to show that defendants owed any duty to plaintiffs to communicate accurate information.

Further, no recovery for fraudulent misrepresentation, fraudulent concealment or negligent misrepresentation is possible unless plaintiffs can prove justifiable reliance, 
i.e., 
that any reliance was reasonable.  In determining whether there was justifiable reliance, it is necessary to consider all of the facts within a plaintiff's actual knowledge as well as those which he could have discovered by the exercise of ordinary prudence.  
Marino
 
v. United Bank of Illinois, N.A.
, 137 Ill. App. 3d 523, 527 (1985), citing 
Soules v. General Motors Corp.
, 79 Ill. 2d 282, 286 (1980).  If ample opportunity existed to discover the truth, then reliance is not justified.  
Central States Joint Board v. Continental Assurance Co.
, 117 Ill. App. 3d 600, 607 (1983).  Here, plaintiffs admit they made no inquiry into Farrell's background other than their request to him that he supply a letter of reference from Arbor.  Plaintiffs do not assert that they were prevented from making a further inquiry.

"A plaintiff has a duty to investigate further when the circumstances reasonably require, as a matter of prudence, that an investigation be undertaken. [Citation.] *** In short, the crucial question is whether the plaintiffs' conduct was unreasonable under the circumstances and "'in light of the information open to him, that the law may properly say that this loss is his own responsibility.'" [Citation.]" 
West v. Western Casualty & Security Co.
, 846 F.2d 387, 394 (7th Cir. 1988).

Plaintiffs were hiring Farrell for a position in which he 

would have the ability to bind FESAG to any decision Farrell made in the futures industry.  This potentially involved access to vast amounts of money in a volatile situation.  In spite of this, FESAG and Neptuno assert that their reliance on Arbor's three-sentence letter as the sole support for their hiring decision was reasonable.

Plaintiffs correctly point out that whether a plaintiff's reliance was reasonable is usually a question of fact and should be properly decided by the trier of fact.  "Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court."  
Witherell v.
 
Weimer
, 85 Ill. 2d 146, 156 (1981), 
rev'd on other grounds, 
118 Ill. 2d 321 (1987).  Here, plaintiffs' own factual allegations establish that plaintiffs' alleged reliance was unreasonable as  a matter of law.  Illinois courts have held that rulings on motions to dismiss generally do not dispose of actions, but allow plaintiffs an opportunity to amend their complaints unless it becomes apparent that there is no set of facts that could be pleaded that would entitle a plaintiff to recover.  
University of
 
Chicago Hospitals v. MPS
, 231 Ill. App. 3d 602, 605 (1992).  Here, there is no set of facts that could be pleaded that would entitle plaintiffs to recover.    

Finally, defendants point to two out-of-state employment referral cases as support for their position.  In 
Moore v. St.
 
Joseph Nursing Home, Inc.
, 184 Mich. App. 766, 459 N.W.2d 100, a summary dismissal was affirmed because a former employer had no duty to disclose a former employee's violent conduct to a prospective employer, even though the employee had received 24 disciplinary warnings.  In 
Janssen v. American Hawaii Cruises, Inc.
, 69 Haw. 31, 731 P. 3d 163, a former employee of a cruise line who had been sexually assaulted by another former employee sued their former employer and the union that had referred the attacker for employment.  The Hawaii Supreme Court held that the union's contractual duty to refer prospective employees did not obligate it to investigate or screen applicants, and thus the union owed no such duty to the person attacked and no duty existed between the former employer and the person attacked.

Our research reveals that two other jurisdictions have taken a different view of these "negligent referral" cases.  In 
Randi W.
 
v. Muroc Joint Unified School District
, 14 Cal. 4th 1066, 929 P.2d 582, 60 Cal. Rptr. 2d 263 (1997), a student sued a school administrator who allegedly sexually assaulted her and the administrator's former employers who gave him a positive recommendation.

The California Supreme Court held that: (1) the writer of a recommendation letter owes to prospective employers and third persons a duty not to misrepresent the facts in describing the  qualifications and character of the former employee, if making the  misrepresentations would present a substantial, foreseeable risk of physical injury to the prospective employer or third persons; (2) the former employers owed a duty to the plaintiff student not to misrepresent the qualifications and character of the administrator who allegedly committed the assault; (3) letters from the  administrator's former employers made affirmative misrepresenta-tions by positively evaluating the administrator's character and rapport with students without disclosing that disciplinary actions had been taken against him for alleged sexual misconduct with students; and (4) the student was not required to allege that she herself relied on the employer's misrepresentations, but only that her injury resulted from action taken by the recipient of the  misrepresentations in reliance on them.  

In 
Golden Spread Council, Inc. No. 562 of the Boy Scouts of America v. Akins
, 926 S.W.2d 287 (Tex. 1996), a boy scout sued the Boy Scouts of America and the local boy scout council after the scout was allegedly sexually molested by a scoutmaster.  The Texas Supreme Court held that the local boy scout council owed a duty to the potential troop sponsor that asked the council to introduce it to a potential scoutmaster.  This duty extended to children and parents involved in the troop who relied on the council's recommendation.  The council's affirmative act of recommending the scoutmaster created a duty to use reasonable care in light of information the local council had received about the scoutmaster's alleged prior conduct with other boys.

We decline to follow either line of cases here.  Illinois has not recognized a cause of action for "negligent referral" and this is certainly not the case to decide this issue.

For the foregoing reasons, the trial court's dismissal of plaintiffs' complaint is affirmed.

Affirmed.

THEIS and ZWICK, JJ., concur.