SECOND DIVISION

December 9, 2003

No. 1-03-0559

D.S.A. FINANCE CORPORATION, an Illinois ) Appeal from the

corporation, ) Circuit Court of

) Cook County.

Plaintiff-Appellant, ) 

) 

v. )               

)

COUNTY OF COOK, an Illinois )

governmental unit, EARL BELL, MARY )

PAYNE, and SHIRLEY 
DESADIER, doing )

business as D.P. STAFFING, INC. ) Honorable

) Peter A. Flynn,  

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court: 

This case involves a fictional invoice and the Provident Hospital chief financial officer who told plaintiff D.S.A. Finance Corporation (DSA) it was real.  The question is whether defendant Cook County should be required to pay the invoice.  The trial court granted summary judgment in favor of Cook County.  We affirm the trial court.

FACTS

DSA purchases accounts receivable from other companies at a discount, also known as factoring.  In November 2000, Shirley DeSadier approached DSA about possibly selling to DSA an account receivable owned by her company, D.P. Staffing.  D.P. Staffing allegedly provided hospitals with temporary maintenance personnel.  DeSadier told DSA D.P. Staffing had provided services to Provident Hospital (Provident) during October 2000, and, as a result, Provident owed D.P. Staffing $343,696.10.  DeSadier gave DSA a copy of the invoice (D.P. invoice) created by D.P. Staffing and issued to Provident indicating the charges.  DeSadier told DSA it could verify the invoice with Earl Bell, Provident's chief financial officer (CFO).  Provident is owned and operated by Cook County.  At the time of these events, Earl Bell was Provident's Associate Administrator of Finance, a position which is equivalent to that of a CFO.

DSA called Provident's account receivables department to verify the D.P. invoice and the call was directed to Bell.  On or around November 28, 2000, Bell confirmed the D.P. invoice was "a true and accurate statement" of the amount the county owed D.P. Staffing.  On November 30, 2000, Bell signed a fax transmittal form, which he received from DSA, verifying the invoice for $343,696.10 was correct and would be paid to DSA on February 13, 2000.
(footnote: 1)  DSA subsequently agreed to purchase the Provident account from D.P. Staffing.

Provident never made a payment to DSA.  DSA's attempts to speak with Bell or Provident's chief administrative officer about the delinquent account were unsuccessful.  On February 23, 2001, DeSadier paid DSA $59,000 towards the account.  A few weeks later, D.P. Staffing issued a check to DSA for $200,000, but the check was not honored.

On July 6, 2001, DSA filed its initial complaint against Provident alleging breach of contract and seeking $292,696.10 in damages.  The complaint also included several counts against Bell, DeSadier, Payne, and D.P. Staffing.  As exhibits to the complaint, DSA attached the D.P. invoice, DeSadier's factoring application, the factoring contract, the fax transmittal form signed "Earl Bell," a list of Provident's credit references, the bill DSA sent to Provident, and a copy of the $200,000 check from D.P. Staffing.  DSA later amended its complaint to name Cook County as a defendant in place of Provident.

Cook County filed a hybrid motion seeking dismissal or summary judgment, contending DSA failed to plead the existence of a contract.  Cook County attached three affidavits in support of its motion.

Robert Triplett, Provident's Associate Administrator of Human Resources, stated in an affidavit the county board appointed Earl Bell as Provident's "Associate Administrator of Finance (Chief Financial Officer)" in 1996.  Bell resigned in 2001.

Patrick McFadden, Cook County's purchasing agent, stated in an affidavit he kept records of Cook County's contracts and purchase orders.  On March 15, 2002, McFadden reviewed his records and found no contract or purchase order concerning Provident and D.P. Staffing or DSA.

Dennis Rice, Provident's Associate Administrator of Professional Affairs, said in his affidavit his job involved overseeing support services.  Rice said he was "responsible for verifying and receiving reports for [the materials management, pharmacy, hospital security, plant operations, purchasing and dietary] departments, including county voucher forms relating to material management, plant operations, and purchasing."  After reviewing his records, Rice found no invoices or voucher forms for the services reflected in the D.P. invoice.  Rice said D.P. Staffing never provided any services to Provident, including the services reflected by the D.P. invoice for October 2000.  Rice averred Provident directly employed 36 maintenance workers to meet its maintenance needs and "given the physical plant, its size and maintenance requirements, temporary maintenance personnel for the five-week period at the volume reflected in the D.P. invoice [made] no sense."

The county also attached to its hybrid motion Earl Bell's deposition from another lawsuit.  In the other lawsuit, Capital City Financial Group Incorporated (Capital City), another factoring company, filed a complaint against Cook County after Bell, acting as Provident's CFO, verified two fraudulent invoices submitted to Capital City.  During a deposition, Bell invoked his Fifth Amendment right against self-incrimination when asked about his position as Provident's CFO and his actions leading up to the lawsuit.  
Capital City Financial Group, Inc. v. County of Cook
, No. 01 C 564 (N.D. Ill. 2002).

DSA subsequently filed a second amended complaint alleging three additional counts against Cook County for account stated, misrepresentation, and negligent hiring.

In response, Cook County filed another motion for summary judgment and incorporated its memorandum in support of the previous motion to dismiss and the corresponding exhibits.  In addition, Cook County attached the affidavit of Stephanie Wright-Griggs, the chief operating officer of Provident.  Griggs stated Bell worked under her direction and his responsibilities included the day-to-day supervision of Provident's financial operations; however, Bell acted outside the scope of his employment when he told DSA the county would pay the D.P. invoice.  Before Capital City filed its lawsuit in March 2001, Griggs received no complaints that Bell was saying the county would pay unauthorized vouchers.

DSA filed a response to Cook County's motion for summary judgment and attached two exhibits:  the statement of material facts Cook County filed in the 
Capital City
 case and the affidavit of Richard Peck.  Peck was an officer and director of DSA and his affidavit described the events leading up to DSA's decision to factor the D.P. invoice, including DSA's communications with Bell.

The trial court found no contract existed and granted summary judgment on Counts I and II.  The trial court also found DSA failed to show a genuine issue of material fact on count IV for negligent hiring.  Finally, the trial court found, as a matter of law, DSA's reliance on Bell's verification of the invoice was unjustified; therefore, the court granted summary judgment on the misrepresentation claim. 

On appeal, DSA contends the trial court erred in granting summary judgment on Counts I, II and III.

DECISION

Summary judgment is properly granted when the pleadings, depositions, affidavits, and admissions show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  
Harrison v. Harden County Community School District
, 197 Ill. 2d 466, 470, 758 N.E.2d 848 (2001)
.
  When reviewing grants of summary judgment, the court will construe the information in the record strictly against the movant and liberally in favor of the nonmoving party.  
Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.
, 285 Ill. App. 3d 201, 209, 673 N.E.2d 369 (1996). 
 We review the trial court's grant of summary judgment 
de
 
novo
.  
Harrison
, 197 Ill. 2d at 470-71. 

I.  
Account stated
 and
 breach of contract – Counts I and II

A.  Breach of Contract

A party claiming breach of contract must present facts showing (1) a valid and enforceable contract existed; (2) the plaintiff performed according to the contract; (3) the defendant breached the contract; and (4) the breach resulted in damages.  
Mansourou v. John Crane, Inc.
, 248 Ill. App. 3d 963, 965, 618 N.E.2d 689 (1993).

In this case, DSA bases its breach of contract claim on a contract which DeSadier told DSA existed between D.P. Staffing and Provident Hospital.  DSA did not attach a written copy of the contract to its complaint, nor does it allege it ever received or saw the contract.  Instead, DSA relies on the D.P. invoice as proof of the underlying contract and contends Bell's verification of the invoice serves as an admission the contract existed.    

However, the county's purchasing agent stated in an affidavit he keeps records of the county's contracts and he found no contract between Provident and D.P. Staffing in the county's records.  

Dennis Rice, who oversaw Provident's support services, also found no invoice for D.P. Staffing's services in his records and said D.P. Staffing never performed the services listed in the D.P. invoice.

Based on the pleadings, exhibits, and affidavits on record, we conclude there was no contract between D.P. Staffing and Provident Hospital for maintenance services in October 2000.  DSA has not presented a contract and instead only assumes one existed based on the D.P. invoice it received from DeSadier and Bell's subsequent verification of it.  Cook County's affidavits show no contract between D.P. Staffing and Provident exists.  Moreover, D.P. Staffing never provided services to Provident.  

We will 
not consider Bell's deposition evidence from another lawsuit, which is what DSA asks us to do here.  With regard to this case, Bell never pleaded the Fifth Amendment on any fact because DSA never deposed him.  But 
cf.
 
Central States, Southeast and Southwest Area Pension Fund v. Wintz Properties, Inc.
, 155 F.3d 868, 872 (7th Cir. 1998) (trial court could draw a negative inference against defendant corporation when its president invoked his Fifth Amendment rights at trial).  

We find no basis for granting DSA relief on its breach of contract claim.  We affirm summary judgment on count II.

B.  Account stated

"An account stated is merely a form of proving damages for the breach of a promise to pay on a contract."  
Dreyer Medical Clinic, S.C. v. Corral
, 227 Ill. App. 3d 221, 226, 591 N.E.2d 111 (1992).  
Without 
prima
 
facie
 proof of
 an agreement, DSA cannot be held liable for account stated.  See 
Dreyer Medical Clinic
, 227 Ill. App. 3d at 226-27.  Accordingly, we affirm summary judgment on count I.

II.  Fraudulent misrepresentation - Count III

To successfully state a claim for fraudulent misrepresentation, a party must allege: "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance."  
Board of Education of City of Chicago v. A, C, and S, Inc.
, 131 Ill. 2d 428, 452, 546 N.E.2d 580 (1989).  The party alleging fraudulent misrepresentation must show it justifiably relied on another's statements.  
Soules v. General Motors Corp.
, 79 Ill. 2d 282, 268, 402 N.E.2d 599 (1980). 

The parties do not dispute the following facts:  (1) Bell told DSA the D.P. Invoice was correct and the county would pay it; (2) Bell's statement was false; and (3) DSA detrimentally relied on Bell's statement by factoring the D.P. Staffing account.  Additionally, Cook County does not contend Bell was unaware of his statements' falsity when he made them.  In this appeal, the parties' disagreement centers on whether DSA was justified in relying on
 Bell's representations and whether Bell's  statements can be imputed to Cook County.  The parties also dispute whether Cook County can be held vicariously liable under the doctrine of 
respondeat
 
superior
 for Bell's fraudulent actions.  DSA contends Cook County should be estopped from denying liability.

A.  Justifiable reliance

Typically, justifiable reliance is a question of fact; however, the court may dispose of the issue on summary judgment if the facts are undisputed and only one conclusion is apparent.  
Neptuno Treuhand- Und Verwaltungsgesellschaft MBH v. Arbor
, 295 Ill. App. 3d 567, 575, 692 N.E.2d 812 (1998)
.  
To find justifiable reliance, the court considers whether the party was reasonable in relying on his adversary's representation in light of the facts within his actual knowledge and any he might have discovered by the exercise of ordinary prudence.  
Soules
, 79 Ill. 2d at 268. 
 "[A] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another."  
Chicago Export Packaging Co. v. Telephone Industries, Inc.
, 207 Ill. App. 3d 659, 663, 566 N.E.2d 326 (1990).  If the party's reliance is unreasonable in light of the information open to him, the loss is considered his own responsibility.  
Neptuno
, 295 Ill. App. 3d at 575.
 

Cook County's purchasing ordinance mandates the following:

"The Board of Commissioners of Cook County shall have no power or authority to delegate to any committee or other person or persons the 'power to act,' when such 'power to act' shall involve the letting of any contract or the expenditure of public money exceeding the sum of $10,000.00; and any action of said board, or of any committee thereof, or of any other person or persons in violation of this section shall be null and void.  No money shall be appropriated or ordered paid by said County Commissioners beyond the sum of $10,000.00, unless such appropriation shall have been authorized by a vote of at least two-thirds of the members elected to the said county board.  And no officer of Cook County, or other person shall incur any indebtedness on behalf of the county, unless first authorized by said Board of Commissioners."  Cook County Ordinances, ch. 10, §
 17.

The purpose of purchasing ordinances like this one is to safeguard against favoritism, fraud, and corruption, and ensure the county's supplies and services, which are paid for by taxpayers, purchased at the best price.  See 
McMahon v. City of Chicago
, 339 Ill. App. 3d 41, 49, 789 N.E.2d 347 (2003).

Business transactions involving municipal corporations are not governed by the same rules as non-governmental entities.  Illinois courts presume a party doing business with a government entity knows two things:  (1) he cannot enforce a contract unless the applicable statutory method of executing the contract has been followed; and (2) statutes and ordinances limit an official's authority to bind a government entity to a contract.  
McMahon
, 339 Ill. App. 3d at 46.

Our decisions illustrate how these presumptions impact the reasonableness of a party's reliance on a government official's representations in the context of equitable estoppel claims against municipalities.

In 
Lindahl v. City of Des Plaines
, 210 Ill. App. 3d 281, 568 N.E.2d 1306 (1993), the plaintiff sought to enforce a contract against a municipality.  According to the plaintiff, his supervisor agreed to pay him additional compensation for "overtime."  
Lindahl
, 210 Ill. App. 3d at 294.  The court found no contract existed because the city did not appropriate funds for overtime compensation pursuant to the relevant statutes.  The  plaintiff was presumed to know about the statutory limitations on the defendant's liability for a contract its officials attempted to enter into without proper authorization.  
Lindahl
, 210 Ill. App. 3d at 294.  

The court also dismissed the plaintiff's equitable estoppel claim.  "The doctrine of equitable estoppel may be invoked against a municipality if two prerequisites are met:  '(1) an affirmative act on the part of the municipality; and (2) the inducement of substantial reliance by the affirmative act.' " 
Lindahl
, 210 Ill. App. 3d at 295, quoting 
Bank of Pawnee v. Joslin
, 166 Ill. App. 3d 927, 938, 521 N.E.2d 1177 (1988).  The plaintiff failed to show either of these elements.  First, the representations of the supervisor were not the municipality's acts, because the supervisor had no authority to grant overtime pay.  
Lindahl
, 210 Ill. App. 3d at 296.  Second, the court found the plaintiff "did not 
detrimentally
 
rely
 upon his supervisor's representations because knowledge of the limitations of [the municipality's] liability with respect to any contract which its officials attempt to enter into was imputed to plaintiff."  (Emphasis added.)  
Lindahl
, 210 Ill. App. 3d at 296.

The court reached a similar conclusion when deciding a zoning dispute in 
American National Bank & Trust Co. of Chicago v. Village of Arlington Heights
, 115 Ill. App. 3d 342, 450 N.E.2d 898 (1983).  The plaintiff alleged Arlington Heights was estopped from asserting the relevant property was zoned for anything other than a general business district.  The plaintiff contended he justifiably relied on statements by the village planner and the plat and subdivision committee 
regarding zoning restrictions on the property.  The court affirmed dismissal of the plaintiff's estoppel claim because the representations made by the village planner and the plat and subdivision committee
 "
were the unauthorized acts or misinterpretations of ministerial officers rather than acts of the municipality itself."  
American National Bank
, 115 Ill. App. 3d at 348.  
The court said:

"The affirmative acts which induce reliance by a party must be acts of the municipality itself, such as legislation by a city council, rather than merely the unauthorized act of a ministerial officer or a ministerial misinterpretation. [Citation omitted.]  A person who deals with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority and that is so even though the agent himself may have been unaware of the limitations on his authority."
  
American National Bank
, 115 Ill. App. 3d at 347-48.

DSA contends the nature of Bell's position, as the acting CFO of Provident Hospital, made DSA's reliance reasonable.  
DSA contends it justifiably relied on Bell's statements, because the county gave him the apparent authority to respond to any inquiries concerning Provident's liabilities, including inquiries made by outside parties
.  DSA quotes
 
Diversification Consultants, Inc. v. Candy-Gram, Inc.
, 130 Ill. App. 2d 1029, 1032, 264 N.E.2d 488 (1970)
:  "A corporation by holding out an officer or other agent as having authority to act for it in such a way as to justify an inference or assumption that the officer or agent is acting within the scope of his authority is bound by it."

In 
Diversification Consultants
, a private corporation contended it was not bound by a contract entered into by its president because the president acted outside the scope of his employment.  On appeal, the court found the corporation's board of directors authorized the president to enter into the contract; thus, the president acted within the scope of his employment.   
Diversification Consultants
, 130 Ill. App. 2d at 1032. 

DSA also quotes 
Sims v. Tezak
, 296 Ill. App. 3d 503, 694 N.E.2d 1015 (1998)
:  "Where the representation is made as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation, even though the means of investigation were within the reach of the injured party and the parties occupied adversary positions toward one another."
 

  In 
Sims
, this court, seeking to preserve the possibility of settlement in fraud cases, refused to find, as a matter of law,
 a plaintiff could never justifiably rely on a defendant's representations during settlement negotiations in a fraud case, even though the underlying claim was based on allegations of the defendant's dishonesty.  
Sims
, 295 Ill. App. 3d at 511. 

The cases relied on by DSA concern purported debts of private corporations.  Public funds and obligations were not involved.  There was no risk of a raid on the public treasury.  If we were to side with DSA in this case, we would make large public agencies vulnerable to frauds and thefts that are beyond the agency's control.  We agree with the county that someone who plans to seek payment of a substantial amount of public funds should first determine that the obligation exists.  That is not asking too much of an entity that is in the business of buying someone else's claims against taxpayer funds.

Here, the invoice and the fax transmittal form were created by private parties, not by the Board or its agents.  The transmittal form and invoice sent to Bell reflects DSA's expectation that Bell would be remitting to DSA a check for $343,696.10.  DSA was charged with knowing the documents purported to create a Cook County obligation, not a debt to be incurred or paid by Provident Hospital.  The ordinance sends that clear message.

Due to our finding that DSA presented no fact issue concerning its justifiable reliance on Bell's statements, Cook County cannot be held directly or vicariously 
liable for the alleged fraud.

B.  Equitable estoppel

DSA contends Cook County should be estopped from denying liability because its employee Bell induced DSA to factor a fraudulent invoice.  In its reply brief, DSA expands its estoppel argument and contends estoppel applies because Cook County did not deny the debt when it received DSA's reminder invoice.

The doctrine of equitable estoppel bars a municipality from raising a particular defense to liability if the adverse party can show its action was induced by the municipality's conduct and estoppel relief is required to prevent substantial loss.  
City of Chicago v. Unit One Corp.
, 218 Ill. App. 3d 242, 246, 578 N.E.2d 194 (1991).  However, equitable estoppel must be specifically pleaded by the party asserting it.  
Parks v. Kownacki
, 193 Ill. 2d 164, 180 (2000).  Upon reviewing the record, we find DSA did not specifically plead equitable estoppel in its complaint. Although the trial court initiated a discussion of estoppel during the hearing on summary judgment, DSA's failure to plead estoppel precludes our consideration of the issue on appeal.  See 
Parks
, 193 Ill. 2d at 180.

CONCLUSION

For the above-stated reasons, we affirm the judgment of the circuit court.

Affirmed.

CAHILL, and BURKE, JJ., concur.

FOOTNOTES
1: Although the date appears on the form as "2-13-00", we note plaintiff's second amended complaint suggests the actual due date was February 13, 2001.