Filed 12/23/21  Sinkiewicz v. Skyline 83 Batavia Investors CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THOMAS E. SINKIEWICZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SKYLINE 83 BATAVIA INVESTORS, INC., <br><br> Defendant and Respondent. | A157192 <br><br> (San Francisco County <br> Super. Ct. No. CGC-17-561619) |

The plaintiffs in this case, Thomas E. Sinkiewicz and Gayle A. Sinkiewicz, bought commercial real property and then sued the seller, Skyline 83 Batavia Investors, Inc. (Skyline), alleging that the property listing had significantly overstated the property's size.  The trial court granted Skyline's motion for summary judgment, and plaintiffs now appeal.  The issue before us is whether the trial court abused its discretion by denying plaintiffs' request for leave to amend the complaint.  We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Allegations in Plaintiffs' Complaint*

In September 2017, plaintiffs filed a complaint against Skyline alleging causes of action for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, unfair business practices, and tort of another.

1

They alleged that Skyline conveyed false information about the square footage of real property at 107 N. Batavia Avenue in Batavia, Illinois (the Property): the listing stated that the commercial space was 3,800 square feet, when the actual size was only about 2,300 square feet. Plaintiffs alleged that they justifiably relied on the listing when they bought the Property in April 2014 for the listed price; they would not have bought the Property if they had known the truth about its size; and they did not discover the misrepresentation until October 2015. Plaintiffs claimed to have suffered $1 million in economic damage.

B.    *Undisputed Facts*

In April 2014, in connection with a so-called "1031 exchange" under Internal Revenue Code section 1031, plaintiffs sought to purchase commercial property occupied by fast food restaurants under long term leases. They were represented by licensed real estate agents of their own choosing, who worked under the license of real estate brokerage Marcus & Millchap Company (MMC). Plaintiffs' agents contacted William Schofield, another licensed real estate agent working for MMC, and a principal of Skyline, asking for information about investment opportunities that would meet the plaintiffs' criteria.

On April 23, 2014, Schofield sent plaintiffs' agent a document concerning the Property, stating that his partnership, Skyline, owned the Property and planned to start marketing it within the next month or so. The document, which Schofield characterized as a "draft numbers page," and which was entitled "Offering Memorandum," showed the "Rentable Square Feet" of the property as 3,800, and stated that the Property was occupied by a Hardee's restaurant under a 20-year lease that had commenced in 2013. The Offering Memorandum was printed on MMC stationery, and stated, "This

information has been secured from sources we believe to be reliable, but we make no representations or warranties, expressed or implied, as to the accuracy of the information.  References to square footage . . . are approximate.  Buyer must verify the information and bears all risk for any inaccuracies."  At some point, plaintiffs received a copy of the Offering Memorandum.

On April 25, 2014, the plaintiffs and Skyline entered a Purchase Agreement (the Agreement) in which plaintiffs agreed to pay $1,864,285 to acquire the Property.  By its terms, the Agreement is governed and construed in accordance with Illinois law, except that paragraph 9 ("Condition of Property") is governed by California law.  The Agreement says nothing about the size of the Property.[1]

In paragraph 5, "Contingencies," the Agreement provided a diligence period for plaintiffs (as "Buyer") to review and approve certain documents to be produced by Skyline (as "Seller"), and to conduct physical inspections of the Property.  Plaintiffs would be deemed to have approved the physical condition of the property absent failure to approve or object to the condition in writing by the end of the diligence period.

Paragraph 9 of the Agreement, which was initialed by plaintiffs, states, "It is understood and agreed that the Property is being sold 'as is;' that Buyer has, or will have prior to the Closing Date, inspected the Property; and that neither Seller [i.e., Skyline] nor Agent [defined as MMC] makes any representation or warranty as to the physical condition or value of the Property or its suitability for Buyer's intended use except as stated herein."

---

[1] The Agreement disclosed that some of the principals of Skyline, including Schofield, were licensed real estate agents or brokers, and that Schofield was a licensed agent at MMC.  The Agreement also disclosed that MMC represented both the buyer and seller in the sale of the Property.

3

Paragraph 9 further states, "Upon Buyer's satisfaction or waiver of the contingencies [which include the review of Seller's documents and physical inspection of the Property] Buyer will purchase the property 'as is' and solely on reliance on its own investigation of the Property." In addition, paragraph 9 states, "Upon Closing, Buyer hereby waives, releases, acquits and forever discharges Seller . . . to the maximum extent permitted by law from any and all claims, actions, causes of action . . ., direct or indirect, known or unknown, foreseen or unforeseen, that it now has or which may arise in the future on account of or in any way growing out of or connected with Property Condition." "Property Condition" is defined as "each and every matter of concern or relevance to Buyer relating to the Property, including [the] physical . . . condition and sufficiency of the Property and all improvements and equipment thereon; . . . [and] the fitness of the Property for Buyer's contemplated use." Paragraph 9 also includes an express waiver of Buyer's rights under Civil Code section 1542.

On April 28, 2014, plaintiffs signed a Receipt of Documents, stating that they had received documents "as per the . . . Agreement," including a "Survey dated June 7, 2013." Plaintiffs concede that the Survey "depicted the dimensions of the building on the . . . Property, and hence would have allowed, with a modicum of arithmetic, a rough calculation that the actual rentable square footage in the building was actually in the vicinity of 2217 square feet." The Receipt of Documents and the documents themselves had been sent to plaintiffs by their agents. Plaintiffs' agents sent most of the documents by mail and email but informed the plaintiffs that because the Survey was too large to email or mail, they had made it available for plaintiffs to download from Dropbox and provided a link to it. Plaintiffs admit they did not review the Survey before the close of escrow.

4

On May 2, 2014, plaintiffs signed a Contingency Removal, stating "Buyer hereby approves and removes as contingencies" various inspections, including the documents provided by seller and the physical inspection, and specifically confirming receipt of the documents. With the removal of contingencies, the Agreement became binding. Escrow closed a few days later.

C. *Motion for Summary Judgment*

Skyline moved for summary judgment, or alternatively for summary adjudication as to each cause of action. Skyline argued that plaintiffs' contractual waiver of claims, which was governed by California law, barred their claims, and that in any event the individual claims, which were governed by Illinois law, failed because they could not be supported by any admissible evidence.

In opposition to the motion, Plaintiffs argued that the contractual waiver did not apply to their claims for intentional fraud and negligent misrepresentation. They conceded that summary adjudication should be granted as to all their claims, but they argued that the evidence raised triable issues of fact that defendants had violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1 et seq. (Illinois Act)), and sought leave to amend their complaint to allege a cause of action under the Illinois Act.

In reply, Skyline argued that plaintiffs' proposed Illinois Act cause of action was time-barred, and that in any event plaintiffs could not carry their burden of proof.

The trial court granted the motion for summary judgment and denied as futile plaintiffs' request to amend the complaint. The trial court ruled that plaintiffs had waived all claims, and that even if the waiver were invalid,

5

plaintiffs' proposed cause of action under the Illinois Act was barred by the three-year statute of limitations, which had expired before plaintiffs filed their complaint.

Judgment was entered for Skyline and plaintiffs timely appealed.

**DISCUSSION**

Plaintiffs argue that the trial court incorrectly interpreted the law in upholding the contractual waiver of claims and in deciding that their proposed cause of action was time-barred. We conclude that the Illinois Act claim is time-barred, and therefore we need not reach the issue of waiver.

A.    *Applicable Law and Standard of Review*

Where a motion for summary judgment has been granted but the facts indicate that the plaintiff has a good cause of action that has been imperfectly pleaded, the trial court should grant a request for leave to amend. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280.) We review the denial of leave to amend for abuse of discretion. (*Id.* at p.1281.) If the proposed amendment would not state a cause of action, however, it is proper to deny leave to amend. (*Id.* at p. 1280.) On appeal, the plaintiff bears the burden of showing that the court abused its discretion by making a ruling that exceeded the bounds of reason or is legally incorrect. (*Id.* at p. 1281.) Where, as here, the plaintiff claims that the abuse of discretion is based on an error of law, we are presented with a legal question, which we review de novo. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)

To prove a violation of the Illinois Act, a plaintiff must prove a deceptive act or practice; intent on the part of the defendant that plaintiff rely on the deception; the deception occurred in the course of conduct involving trade or commerce; and that damages were proximately caused by

6

the deception.  (*Adler v. William Blair & Co.* (Ill.Ct.App. 1995) 648 N.E.2d 226, 233-234.)

The statute of limitations for an action under the Illinois Act is three years, and any cause of action not filed within the statute of limitations is time barred.  (815 Ill. Comp. Stat. 505/10a(e); *Gredell v. Wyeth Laboratories, Inc.* (Ill.Ct.App. 2004) 803 N.E.2d 541, 547.)  The discovery rule applies to actions filed under the Illinois Act, and therefore "[t]he statute of limitations [begins] to run ' "when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused" ' and, at that point, ' "the party is under an obligation to inquire further to determine whether an actionable wrong was committed." ' " (*Id.* at pp. 546-547.)

B.    *Analysis*

Plaintiffs argue that the statute of limitations did not begin to run until late 2015, when they discovered the discrepancy in square footage between the listing and the Property.  They argue that their complaint was filed within three years calculated from the date of that discovery, and under the relation back doctrine the Illinois Act claim should relate back to the date of filing of the original complaint.

Plaintiffs further argue they justifiably relied on the information in the Offering Memorandum, which was not improbable on its face; they had no obligation to investigate further; and it was error for the trial court to conclude that they should have known the true size of the property on or before May 2, 2014 (when they signed the Contingency Removal).  Their argument rests on the principle that under Illinois law, "where the representation is made as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation, even though the

7

means of investigation were within the reach of the injured party and the parties occupied adversary positions toward one another." (*Sims v. Tezak* (Ill.Ct.App. 1998) 694 N.E.2d 1015, 1020 (*Sims*).)

But the principle stated in *Sims* does not apply here. There was no representation in the Offering Memorandum on which plaintiffs could reasonably rely. In the Offering Memorandum, which was prepared on MMC stationery, MMC stated that it made no representations as to the accuracy of the information, and notified the plaintiffs that as prospective buyers they "must verify the information" and "bear[ ] all risk for any inaccuracies."

Under Illinois law, justifiable reliance is generally a question of fact, but "the court may dispose of the issue on summary judgment if the facts are undisputed and only one conclusion is apparent." (*D.S.A. Finance Corp. v. County of Cook* (Ill.Ct.App. 2003) 801 N.E.2d 1075, 1081.) "[T]he court considers whether the party was reasonable in relying on his adversary's representation in light of the facts within his actual knowledge and any he might have discovered by the exercise of ordinary prudence. [Citation.] '[A] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another.' [Citation.]" (*Ibid.*) " 'A plaintiff has a duty to investigate further when the circumstances reasonably require, as a matter of prudence, that an investigation be undertaken.' " (*Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor* (Ill.Ct.App. 1998) 692 N.E.2d 812, 818.) " '[T]he crucial question is whether the plaintiffs' conduct was unreasonable under the circumstances and " 'in light of the information open to him, that the law may properly say that this loss is his own responsibility.' " [Citation.]' " (*Ibid.*)

8

Even apart from the disclaimer on the Offering Memorandum, on the facts here, plaintiffs had a duty to further investigate the representations in the Offering Memorandum. This is reflected in the Agreement, which includes an acknowledgement that neither Skyline nor MMC made any representation as to the size of the Property as well as a provision that plaintiffs would inspect the Property before closing and would purchase the property "solely on reliance on [their] own investigation of the Property." (See *Schrager v. Bailey* (Ill.Ct.App. 2012) 973 N.E.2d 932, 939 [nonreliance clause in agreement precludes plaintiff from proving justifiable reliance].)

Further, the circumstances here reasonably required as a matter of ordinary prudence that plaintiffs investigate the size of the Property because, as plaintiffs stated in the trial court, plaintiffs understood the square footage of the Property to be a material consideration in their evaluation of its fair market value.

Plaintiffs were not prevented from undertaking the necessary investigation. Far from it. They admit that the relevant information was available in the Survey that they had received and approved. By signing the Contingency Removal, plaintiffs signified that they had reviewed the Survey. Under the circumstances, their failure to review it is unreasonable.[2]

In sum, the undisputed facts compel the conclusion that plaintiffs reasonably should have known the size of the Property when they signed the Contingency Removal. Because plaintiffs claim that the value of the Property was inflated based on the overstated size, their alleged injury

---

[2] Plaintiffs' contention that they did not know how to use Dropbox is irrelevant. In any event, plaintiffs' only support for that contention is a citation to a portion of Mr. Sinkiewicz's declaration to which Skyline's evidentiary objection was sustained, and plaintiffs do not challenge the trial court's evidentiary rulings.

9

occurred when they removed the contingencies on May 2, 2014 and committed themselves to paying more than they now claim they would have paid had they known the true size. Accordingly, the three-year limitation period for a claim under the Illinois Act expired by May 2, 2017, before plaintiffs filed their complaint; amendment of the complaint to add such a claim would be futile; and the trial court properly denied plaintiffs' request for leave to amend.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

                                        _____
                                        Miller, J.


WE CONCUR:


_____
Stewart, Acting P.J.


_____
Kline, J.*


A157192, *Sinkiewicz v. Skyline 83 Batavia Investors, Inc.*

---

* Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.