City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. Peter J. Kiger, Defendant-Appellant.

Gen. No. 53,621.

First District, Second Division.

September 29, 1970.

Marvin D. Michaels, of Chicago, for appellant.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

In a trial by the court without a jury the defendant, Peter J. Kiger, was found guilty of disorderly conduct and obstructing traffic in violation, respectively, of chapter 193–1(d) and chapter 27–291 of the Municipal Code of Chicago. Judgments were entered, and the defendant was fined $500 for disorderly conduct and $200 for obstructing traffic. The trial court consolidated both charges for purposes of appeal. In this court the defendant contends that: (1) trial errors deprived him of a fair trial; (2) the judgments are contrary to the manifest weight of the evidence; and (3) the penalties are excessive.

This case involves two Municipal Code violations, quasi-criminal offenses, alleged to have been committed

by the defendant near the Conrad Hilton Hotel in Chicago on Wednesday, August 28, 1968, during the Democratic National Convention. The record reveals that the defendant was arrested on August 28, 1968. On that date a quasi-criminal complaint was filed charging him with disorderly conduct at 720 S. Michigan Avenue in Chicago, Cook County, Illinois, on August 28, 1968, in that:

> ". . . he knowingly failed to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm in violation of Chapter 193 Section 1D of the Municipal Code of the City of Chicago."

This complaint was signed by the complainant, Officer Rappaport #12256.

When the case was called for trial on September 9, 1968, a second quasi-criminal complaint was filed against the defendant. This one charged him with obstructing traffic on August 28, 1968, at 800 S. Michigan in Chicago, Cook County, Illinois, in that:

> ". . . he did willfully and unnecessarily hinder, obstruct, or delay another person in lawfully driving, walking or traveling along or upon a street or a sidewalk in violation of Chapter 27 Section 291 of the Municipal Code of the City of Chicago."

This complaint was signed by the complainant, Frank Rappaport.

On September 9, 1968, the parties went to trial on both quasi-criminal complaints. Officer Frank Guy Rappaport was the sole witness for the City and the defendant was the only witness for the defense. When the case was called, the defendant indicated that he wished to represent himself. A colloquy between the court and Kiger disclosed that the defendant, twenty-nine years of age and a resident of New York City, had completed

graduate school and one year of medical school. He did not wish to retain private counsel. The court expressed concern at the prospect of the defendant representing himself. At the suggestion of the Assistant Corporation Counsel but over the objections of the defendant, the court appointed an assistant public defender who was present in the courtroom to assist the defendant in his defense and said to him:

"Mr. Public Defender, I want you to stand behind him anyway and if at any time you feel that some assistance should be proffered, I want you to feel free to help this man protect his rights, whether he realizes it or not."

The defendant then pleaded not guilty to the charge of disorderly conduct and, after the assistant public defender consulted with him, entered a similar plea to the charge of obstructing traffic. Thereafter, the defendant waived a jury trial.

Officer Frank Guy Rappaport, a City of Chicago policeman with three years of experience at the time of trial, testified that on August 28, 1968, at approximately 6:00 p. m., he was on duty in the vicinity of the Conrad Hilton Hotel in Chicago and was standing in a police line, facing north, across Michigan Avenue and south of Balbo Street; that he was in the center of this police line which was placed behind a Deputy Superintendent of Police; and that to the north of the Deputy Superintendent of Police Rocheford, a large crowd of people had assembled and were blocking Michigan Avenue. Continuing, Officer Rappaport testified that Deputy Rocheford was using a loud speaker and imploring the crowd to move off the streets; that he saw the defendant at this time, approximately ten to twelve feet from him, and heard the defendant tell the crowd: "Don't go. Kill the pigs. Hell no, we won't go"; and that this confrontation continued for at least twenty minutes before Deputy Rocheford gave orders to the police to disperse the crowd.

Officer Rappaport testified that he then tried to arrest the defendant but was unable to do so at that time

due to a pile up of humanity at the intersection of Michigan and Balbo. He did see the defendant moving toward a park which was located east of Michigan Avenue and directly across from the Hilton Hotel. Rappaport stated that he saw the defendant throw rocks at the police line as he moved into the park. Later, Officer Rappaport arrested the defendant for disorderly conduct. When arrested, the defendant was standing in front of a crowd in the park. In conclusion, Officer Rappaport testified that the defendant did not resist arrest until they reached the police van. The defendant then tried to pull back, but a police lieutenant assisted Rappaport and they both put the defendant in the van.

Before the defendant cross-examined Rappaport, the assistant public defender consulted with him. Thereafter, the defendant advised the court that he did not wish to conduct any cross-examination because his testimony was going to contradict the police officer. The defendant told the court:

> ". . . I don't want to take the time, and I don't have the legal acumen to catch him in his testimony."

THE COURT: "You have the public defender."

DEFENDANT: "Yes, I waive that."

The defendant than testified in his own behalf. He stated that he lived in New York City and was arrested, in the park, at approximately 8:00 p. m. on Wednesday, August 28, 1968; that earlier he had joined, as a spectator, approximately two thousand demonstrators on South Michigan Avenue near the Hilton Hotel and had sat down in the street with some of them; and that he attempted to act as a peacemaker when the police later cleared the streets and forced the demonstrators into the park. Continuing, the defendant stated that he saw the police hurt a number of young people which caused other demonstrators to throw rocks and cans at the police; that he found himself physically placed between the police line and the demonstrators and was urging both sides to stay away from each other and to remain calm; that he believed in nonviolence and not

in calling people names; and that he did not join the crowd in uttering chants of profanity at the police.

After the police had cleared the street and set up a new police line on the sidewalk, the defendant found himself in the park with a few hundred demonstrators. He testified that he told them to stop piling rocks and throwing them at the police and that he led approximately one hundred and fifty people in songs such as "We Shall Overcome." He was then arrested. In conclusion, the defendant testified that he never resisted arrest and that he never heard an order to disperse put out over a loud speaker by the police or uttered by an individual police officer.

After the defendant stated that "this is pretty much my testimony but the final thing is the time of the arrest," the court noted that the position of the defendant was that he did not come to the scene with any idea of creating a disturbance. The defendant agreed and stated that he went to the hotel to demonstrate peacefully in an attempt to stop the Vietnam war. The defendant went on to say that he joined the larger group at Michigan and Balbo after leaving the Grant Park bandshell where he had acted as a peacemaker when a fracas occurred there between the police and young people.

In response to a question from the Assistant Corporation Counsel, the defendant thereafter admitted that: (1) at the bandshell the flag of the United States had been lowered and the flag of North Vietnam had been raised which led to the fighting and some rocks being thrown; and (2) he had come to Chicago in a car with three other people for the purpose of engaging in a week of demonstrations. The Assistant Corporation Counsel then asked for the maximum fine under each charge— $500 for disorderly conduct and $200 for obstructing traffic. The court found the defendant guilty of both charges and entered fines in accordance with the recommendation of the Assistant Corporation Counsel.

Initially, the defendant contends that he was deprived of a fair trial in that the trial court ignored his request that he be permitted to defend himself without counsel

and, over his objections, imposed an assistant public defender upon him who allegedly permitted prejudicial error to be repeatedly committed and who allegedly actually stipulated to and encouraged additional prejudicial error. Specifically, the defendant urges that his appointed counsel permitted prejudicial hearsay testimony to enter the record when Officer Rappaport testified, without objection, and in detail as to the profanities screamed at the police by the members of the crowd during the incident. It is also urged that his appointed counsel erred when he did not object to testimony concerning the flag-raising incident in Grant Park.

■■ This argument assumes that the assistant public defender was defendant's counsel whereas, in fact, the record shows that the trial court always recognized that the defendant was representing himself as he had a right to do and the assistant public defender was serving only as an adviser. When the defendant elected to proceed pro se, he assumed responsibility for the legal consequences of his decision. The defendant did not object to the evidence now attacked. Earlier in the trial he had instructed the assistant public defender not to interject. Apparently the defendant chose to proceed without any legal assistance. We find no merit in the contention that he was deprived of a fair trial.

■ Secondly, the defendant urges that the judgment should be reversed because the findings of fact are not supported by the manifest weight of the evidence. Specifically, he contends that his testimony was uncontradicted and unimpeached whereas the testimony of Officer Rappaport indicated that he was not the same police officer who signed the complaint for disorderly conduct and, indeed, a comparison of the two complaints would indicate that they were signed by different individuals. Both parties recognize that a prosecution brought to recover a fine for the violation of a municipal ordinance is civil in form and is tried and reviewed as a civil proceeding. Village of Maywood v. Houston, 10 Ill 2d 117, 139 NE2d 233 (1957); City of Chicago v. Lawrence, 42 Ill2d 461, 466, 248 NE2d 71 (1969); City of Highland Park v. Curtis, 83 Ill App2d 218, 226 NE2d 870 (1967).

Apparently the defendant recognized Officer Rappaport as being his arresting officer and the person who signed the complaints because he did not cross-examine the police officer on this point or any other point but merely stated that his testimony was going to contradict the testimony of the complaining witness. Furthermore, when the defendant obtained his own counsel for purposes of an appeal, counsel did not file a motion for a new trial setting out this information, as he could have done since thirty days had not yet elapsed from date of judgment, but filed his notice of appeal. In effect, this contention is raised for the first time on appeal after the defendant did not question, at the trial, the identity of Officer Rappaport as the complaining witness.

██ ██ The evidence itself as to the disorderly conduct charge is merely conflicting and was for the trial court to resolve as the trier of fact in this nonjury case. The judgments are amply supported by a clear preponderance of the evidence. Indeed, the defendant admitted to sitting down in Michigan Avenue with the other demonstrators, a plain violation of the ordinance prohibiting the obstructing of traffic within the City of Chicago.

Lastly, the defendant contends that the penalties are excessive and the result of the flag incident matter being brought to the attention of the trial court by the Assistant Corporation Counsel. The maximum penalty was imposed for each violation. Section 193–1 of the Municipal Code of Chicago states that a person convicted of disorderly conduct shall be fined not less than $5 nor more than $500 for each offense whereas no penalty is set forth in section 27–291 of the Municipal Code which defines obstructing traffic. However, section 27–363 states that the fine in such cases in which no penalty is specifically provided shall be not more than $200 for each offense.

██ The maximum fines imposed in this case are supported by the record. The defendant admitted that he sat down in Michigan Avenue with the other demonstrators. In light of the unusual circumstances in this case, we will not interfere with the trial court's discre-

tion in imposing the maximum fine for obstructing traffic.

As for the disorderly conduct charge, we are of the opinion that the maximum fine imposed was also supported by the evidence. Officer Rappaport testified that in response to a command from Deputy Rocheford given to the crowd over a loud speaker asking them to disperse, he heard the defendant tell the crowd: "Don't go. Kill the pigs. Hell no, we won't go." The crowd refused to disperse. This evidence showed that the defendant was therefore leading the crowd in defying the police and later threw rocks at the advancing police line. These aggravating factors adequately support imposition of the maximum fine for disorderly conduct.

The judgments are affirmed.

Judgments affirmed.

McCORMICK, P. J. and BURKE, J., concur.