FOURTH DIVISION
Filed:  July 13, 2006

1-05-0572

CITIZENS TO ELECT JACQUELINE Y. COLLINS, )
                                                                        )
                                    Petitioner,           )          On review from an Order of
                                                                        )          the Illinois State Board of
                        v.                                        )          Elections
                                                                        )
ILLINOIS STATE BOARD OF ELECTIONS, DANIEL )      No. S 8067
W. WHITE, Executive Director, JOHN KEITH, Chairman, )
JESSE SMART, Vice Chairman, WILLIAM            )
McGUFFAGE, DAVID MURRAY, ALBERT PORTER, )
WANDA REDNAUER, ELAINE ROUPAS, and BRYAN  )
SCHNEIDER, Members,                                    )
                                                                        )
                                    Respondents.       )


        JUSTICE  MURPHY delivered the opinion of the court:

        Petitioner, Citizens to Elect Jacqueline Y. Collins (an Illinois political committee),

appeals from a decision of respondent Illinois State Board of Elections denying

petitioner's motion to reconsider the imposition of a civil penalty.[1]  Petitioner contends

on appeal that it showed both extraordinary circumstances for filing its motion to

reconsider in an untimely manner and the merits of its underlying challenge to the civil

penalty.  It did so by showing that a campaign disclosure calendar issued by the Board

was misleading and that petitioner relied upon the misleading calendar in failing to

---

[1]This is an appeal directly from the Board to this court pursuant to section 9-22 of the

Election Code (10 ILCS 5/9-22 (West 2004)), and Supreme Court Rule 335 (155 Ill. 2d R. 335).

disclose particular campaign contributions in a particular filing.  Petitioner also contends that, if a civil penalty was applicable, it should have been limited to 10% of the amount of the undisclosed contributions rather than their entire amount.  Lastly, petitioner contends that the Board did not vote by a majority when it imposed the civil penalty or when it denied petitioner leave to file a late motion for reconsideration and, therefore, the Board acted without authority.

FACTS

On various dates from July 29 through November 5, 2002, petitioner filed with the Board documents disclosing the contributions to, and itemized expenditures of, petitioner with regard to the primary election of March 19, 2002, and the general election of November 2002.  Particularly, petitioner's semiannual report (Board form D-2), filed July 29, 2002, listed contributions on March 15, 2002, of $1,000 by Elzie Higginbottom and $500 by the Chicago Teachers Union PAC.

On January 20, 2004, an employee of the Board, Rupert Borgsmiller, sent petitioner a letter alleging that petitioner did not report, on Board form Schedule A-1, contributions of $500 or more within two business days of receipt as required by section 9-10(b-5) of the Election Code (Code) (10 ILCS 5/9-10(b-5) (West 2004)).  Specifically, the letter alleged that two contributions, of $1,000 by Elzie Higginbottom and $500 from the Chicago Teachers Union PAC, were made on March 15, 2002, but not disclosed on a timely Schedule A-1 form.  The letter stated that petitioner "is fined a total of $1500 for delinquently filing Schedule A-1 reports."  The letter also informed petitioner that "you

may appeal the assessed fines if you believe the civil penalties have been assessed in error" by filing a notice of appeal "within 30 days of the mailing of this assessment notice." The letter concluded that, if petitioner failed to timely file an appeal, "[it] forfeit[ed] the right to contest these assessments, and the civil penalties now due must be paid, including the previously stayed fine, within 30 days of this mailing."

In a letter of February 4, 2004, Borgsmiller acknowledged petitioner's $1,500 "payment of a civil penalty for the delinquent filing of Schedule A-1 report(s)."

On March 3, 2004, petitioner filed a notice of appeal with the Board. In the cover letter, petitioner's treasurer stated she had considered payment of the fine "our only viable option" due to "the untimely manner in which the [Board] processes appeals." Attached to the notice of appeal was petitioner's appeal affidavit, stating that "on January 20, 2004, we paid the $150 fine[2] – despite its still pending appeal. But, on that same day, the [Board] imposed yet another fine against [Citizens]: for failing to file a Schedule A-1 Report, we were assessed $1,500." The treasurer explained that she did not report the contributions because she relied upon the Board's 2002 campaign disclosure calendar, according to which the date for filing a new Schedule A-1 form had

---

[2]There is no indication in the record as to the nature of this earlier fine, nor any documents from this earlier proceeding.

passed and no further Schedule A-1 forms could be filed before election day. When the treasurer explained this to Borgsmiller by telephone on February 23, 2004, Borgsmiller confirmed that the Schedule A-1 filing deadline on the calendar was not the deadline mandated by the Code.

On May 5, 2004, counsel for the Board sent petitioner a letter stating that its appeal was untimely, having been filed more than 30 days after mailing of the assessment notice. "In this case the assessment letter was mailed on January 20, 2004, and the due date was February 19, 2004," while petitioner filed its notice of appeal on March 3. The letter also stated that "[i]f there are extraordinary circumstances that would warrant a granting of an extension of the due date, please submit an affidavit of explanation. Should the Board grant the extension, your appeal will be considered and disposed of accordingly."

On June 12, 2004, petitioner filed an affidavit of explanation by the treasurer, in which she claimed that the campaign disclosure calendar issued by the Board did not accurately reflect the requirements of the Code. The treasurer averred that it was her reliance on the erroneous calendar that caused her to fail to file the Schedule A-1 form as required. The treasurer stated that she was reluctant to file an appeal based on the claim that the Board had so erroneously described the requirements of the Code and its own regulations. "It did not seem possible to me that the [Board] would have drafted a document which misrepresents the Election Code." However, when the treasurer spoke by telephone with Borgsmiller on February 23, 2004, Borgsmiller admitted that the

treasurer "had, in fact, identified a discrepancy in the" Board's calendar. The treasurer concluded that "by the time I stopped doubting the merits of my own argument, the due date for [petitioner's] appeal had expired. And now, it seems, [petitioner] is being further penalized for my tendency to trust the" Board.

On February 22, 2005, the Board held a hearing on petitioner's affidavit of explanation "limited to the facts which would establish any extraordinary circumstances warranting an extension of the 30-day period to file an appeal of a civil penalty." The treasurer testified that her reliance on the Board's campaign disclosure calendar caused her failure to disclose the contributions in question on the Schedule A-1 form. Until she spoke with Borgsmiller, the treasurer "assumed that there was something I didn't understand *** because I didn't think that the Board would distribute a document that got something that fundamental and that important wrong." However, once Borgsmiller "acknowledged that I had identified a discrepancy," the treasurer realized that she had valid grounds for an appeal. In his testimony, Borgsmiller denied that there was a discrepancy *per se* in the calendar but admitted that the calendar in question was misleading and that he had acknowledged to the treasurer that he "could see how [the treasurer] could misunderstand." The campaign disclosure calendar had been amended to correct the misleading information found by the treasurer. The Board voted 4 to 4 on a motion to grant petitioner an extension of the time to file its appeal. The motion was denied.

On the same day, February 22, 2005, the Board issued a written order on "a motion for Reconsideration of the imposition of a civil penalty under Article 9 of the" Code. The order recited the Board's finding that a "Motion for Reconsideration was filed by [petitioner] based on additional evidence warranting the acceptance of the appeal received subsequent to the 30 day deadline" and the Board's order that "the Motion for Reconsideration is denied."

Petitioner timely filed its petition for review with this court.

ARGUMENTS OF THE PARTIES

Petitioner contends that it showed both extraordinary circumstances for filing its motion to reconsider in an untimely manner, and the merits of its underlying challenge to the civil penalty. Specifically, petitioner argued that a campaign disclosure calendar issued by the Board was misleading and that petitioner relied upon the misleading calendar in failing to disclose particular campaign contributions in a particular filing. The Board responds that it did not abuse its discretion when it found that the treasurer's reliance did not constitute extraordinary circumstances entitling petitioner to file its administrative appeal outside the usual 30-day period. Petitioner also contends that, if a civil penalty was applicable, it should have been limited to 10% of the amount of the undisclosed contributions rather than their entire amount. The Board does not respond to this particular argument.

Lastly, petitioner contends that the Board did not vote by a majority when it imposed the civil penalty on petitioner or when it denied petitioner leave to file a late

motion for reconsideration and therefore the Board acted without authority. The Board responds that this argument was not raised before the Board and is therefore waived on appeal. Alternatively, the Board contends that it acted with authority, since Board employee Borgsmiller had delegated authority to issue the assessment notice. petitioner's notice of appeal to the Board was untimely and could be saved only by a positive vote of the Board finding extraordinary circumstances, rather than requiring a positive vote of the Board to deny the appeal.

ANALYSIS

I. Extraordinary Circumstances

When a report required by Code section 9-10 is untimely or otherwise deficient, "the Board will send a notice of delinquency *** together with an Order assessing a civil penalty calculated in accord with subsection (e)." 26 Ill. Adm. Code §125.425(d), as amended by 29 Ill. Reg. 18796 (eff. November 7, 2005). A political committee receiving such a notice for violation of section 9-10(b-5), as in this case, must "submit, within 30 calendar days after the mailing of the assessment notice" either payment of the civil penalty or a written challenge of the penalty. 26 Ill. Adm. Code §125.425(f), as amended by 29 Ill. Reg. 18796 (eff. November 7, 2005). "The Board shall not hear an appeal of a civil penalty imposed for delinquent filing *** if neither a request for waiver or appearance and appeal affidavit nor a request for hearing and appeal affidavit is filed within the time required." 26 Ill. Adm. Code §125.425(g), as amended by 29 Ill. Reg.

18796 (eff. November 7, 2005).  However, the Board allows extensions of the appeal period when extraordinary circumstances justify it.

Petitioner argues that it stated extraordinary circumstances: petitioner did not realize it had grounds for an appeal because it relied upon the filing calendar issued by the Board, and when a Board employee acknowledged that the calendar was misleading, petitioner filed an appeal.  Petitioner characterizes this as a classic case of detrimental reliance.  However, to "find justifiable reliance, the court considers whether the party was reasonable in relying on [the] representation in light of the facts within his actual knowledge and any he might have discovered by the exercise of ordinary prudence."  D.S.A. Finance Corp. v. County of Cook, 345 Ill. App. 3d 554, 560 (2003).  The record shows that there was no concealment of the filing calendar's flaw and that the misleading nature of the calendar could reasonably have been discovered by petitioner before the appeal period expired.  First, while the assessment notice was sent on January 20, 2004, the telephone call to Borgsmiller by the treasurer that confirmed the misleading nature of the calendar was not made until February 23 and petitioner did not file its notice of appeal until March 3.  Second, the treasurer testified to the Board that she had called Borgsmiller "to understand why the campaign disclosure calendar was not consistent with the Election Code."  The treasurer stated repeatedly that she "didn't think that the Board would distribute a document that got something that fundamental and that important wrong."  However, she clearly had at least an inkling or suspicion that the Board had done just that, but failed to act on her suspicion until it was

too late. A finder of fact could reasonably find petitioner's detrimental reliance argument less than extraordinary. We conclude that the Board did not err in denying petitioner's request for leave to file a late appeal.

## II. Fine Reduction

Since we find that the Board did not err in denying petitioner's administrative appeal, the issue of whether the Board should not have imposed a fine, or should have imposed a fine lower than the $1,500 herein, is not duly before us.

## III. Fine Void Due to Lack of Board Approval

By contrast, the issue of whether the fine herein was void because it was not approved by a majority of the Board, as allegedly required by the Code, is properly before us. An action or decision by an administrative agency taken in excess of, or contrary to, its statutory authority is void. Alvarado v. Industrial Comm'n, 216 Ill. 2d 547, 554 (2005). Petitioner timely sought appeal from the Board's decision of February 22, 2005, and thus this case is duly before us to consider whether the Board's actions were void. A decision or order can be challenged as void at any time in a court with jurisdiction, and a claim of voidness cannot be waived because courts have an independent duty to vacate void orders. People v. Mathis, 357 Ill. App. 3d 45, 51 (2005).

Section 1A-7 of the Code provides that "[f]ive members of the Board are necessary to constitute a quorum and 5 votes are necessary for any action of the Board to become effective." 10 ILCS 5/1A-7 (West 2004). Code section 9-10(b-5), the statute

petitioner allegedly violated, provides that, "In the final disposition of any matter by the Board, *** the Board may impose fines for violations of this subsection not to exceed 100% of the total amount of the contributions that were untimely reported, but in no case when a fine is imposed shall it be less than 10% of the total amount of the contributions that were untimely reported." 10 ILCS 5/9-10(b-5) (West 2004). Lastly, Code section 9-19 expressly provides:

> "The Board may hire such investigators, examiners, and hearing officers as may be necessary to carry out its functions under this Article, and may by regulation delegate any of its duties or functions under Sections 9-18 and 9-21 of this Article to such persons, except that final judgments and orders shall be issued only by the Board." 10 ILCS 5/9-19 (West 2004).

The clear import of the language "[i]n the final disposition of any matter by the Board *** the Board may impose fines for the violation of this subsection" in section 9-10(b-5) is that the fine must be imposed by a final disposition of the Board. Section 9-19 is equally clear that final judgments must come from the Board itself. In sum, we conclude from the clear language of the Code that a fine or civil penalty under Article 9 of the Code must be approved by at least a majority of the Board itself to become a final judgment of the Board. If a Board employee issues an assessment notice and the subject of the notice pays of its own accord the fine described therein, then the Board

need not reduce the fine to a judgment and the fine is valid without Board approval.  If, however, the subject of the notice does not pay the fine voluntarily and the Board wants to collect the fine, or the Board wants to reduce the civil penalty to a judgment for some other reason, then the Board must vote by at least a majority to impose the fine.  To the extent that the Board's present regulations or procedures are contrary to this statutory requirement, the rule or procedure will be held invalid and the statute followed. Greaney v. Industrial Comm'n, 358 Ill. App. 3d 1002, 1026 (2005).

In this instance, the Board did not act in a manner contrary to the Code.  The Board did not reduce the assessment notice to a judgment because petitioner paid the assessed fine almost immediately, and then failed in its administrative challenge to the fine.  In other words, because petitioner paid the fine without it being reduced to a final judgment, the Board was not required to issue a final judgment imposing a fine on petitioner.  Under the circumstances of this case, the absence of a majority vote approving petitioner's fine did not render that fine void.

CONCLUSION

For the aforementioned reasons, the decision of the Illinois State Board of Elections is affirmed.

Affirmed.

QUINN, P.J., and CAMPBELL, J., concur.