**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 26, 2016
Decided March 18, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

No. 15-2194

| | |
|---|---|
| LOUIS B. ANTONACCI,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>CITY OF CHICAGO, *et al.,*<br>    *Defendants-Appellees.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 15 C 3750<br><br>Milton I. Shadur,<br>*Judge.* |

**O R D E R**

For a little less than a year, Louis Antonacci worked on an at-will basis as a staff attorney at the firm of Seyfarth Shaw LLP. In May 2012, Seyfarth terminated his employment. To borrow Dylan Thomas's phrase, Antonacci did not go gentle into that good night. Instead, he first hired attorney Ruth Major to sue Seyfarth on his behalf. Years of litigation in the state courts ensued, during which Antonacci tried to portray Seyfarth partner Anita Ponder in an extremely unflattering light. One allegation

involved an assertion that the City of Chicago had retained Ponder in a scheme to divert taxpayer money to her for private purposes. Seyfarth retained attorney Matthew Gehringer and the firm of Perkins Coie LLP to represent it; the case was assigned to Judge Eileen Brewer of the Circuit Court of Cook County. The details of those proceedings need not detain us, apart from mentioning that Antonacci believed that court reporter Margaret Kruse and her company, Kruse & Associates, had somehow conspired with Gehringer to tamper with the transcript of a hearing before Judge Brewer. Eventually his state-court suit was dismissed, and the Illinois Appellate Court affirmed that decision. *Antonacci v. Seyfarth Shaw, LLP*, 39 N.E.3d 225 (Ill. App. Ct. 2015).

Antonacci then turned to the federal court for redress, filing this suit under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. He asserted that the many defendants he named had engaged in fraudulent acts designed to sabotage his state-court suit (which was generally for defamation) against Seyfarth and Ponder, and to thwart his application to be admitted to practice in the State of Illinois. He also raised a number of state-law claims, allegedly supplemental to these federal claims.

The district court reviewed the complaint and decided on its own initiative to dismiss the case for want of federal jurisdiction. It concluded that Antonacci's federal claims were so insubstantial that they did not suffice to engage federal jurisdiction, see *Bell v. Hood*, 327 U.S. 678 (1946), and that the requirements for diversity jurisdiction were also lacking. See 28 U.S.C. §§ 1331, 1332. Without a basis for federal jurisdiction, the supplemental claims also had to go. 28 U.S.C. § 1367. We agree with the district court that this is not a simple case of a failure to state a claim on which relief can be granted, see Federal Rule of Civil Procedure 12(b)(6). If we thought that Antonacci's case were plausible enough to engage jurisdiction, we would need to remand, because with no cross-appeal we are not entitled to broaden the relief granted from a dismissal for lack of jurisdiction to a dismissal on the merits. See, *e.g.*, *Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) ("an appellee who does not cross-appeal may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary") (internal quotation marks omitted); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015). But this case is governed by *Bell* and so no remand is necessary.

Antonacci's prolix complaint alleges a wide-ranging conspiracy among the City of Chicago, several law firms, individual lawyers, at least two court reporters, and Judge Brewer, for the purpose of sabotaging his state-court suit against Seyfarth and Ponder

and to foil his bar admission. He breaks this down into six claims: Claims 4 and 5, which are against all defendants, assert violations of RICO; Claim 3 alleges a common-law conspiracy among all defendants; and Claims 1, 2, and 6 are a hodge-podge of fraud, breach of fiduciary duty, and legal malpractice allegations against Major and her law firm.

According to Antonacci's account, the saga begins in August 2011, when Antonacci moved from Washington, D.C., to Chicago to work for Seyfarth. His first assignment was to work for Ponder on a project advising the City of Chicago on its Minority and Women-Owned Business Enterprise Program ("the Program"). Ponder, Antonacci alleges, is an ally of Chicago Mayor Rahm Emanuel and previously worked for and lobbied the City. He also contends that she is notoriously difficult to work with and has been fired from other firms for harassing subordinates. Antonacci believes that the City retained Ponder on the Program at the Mayor's request, with the idea that this work would provide her with funds she could use to pay off alleged sizeable federal tax liens on property she owned in Cook County. Whatever the truth of those assertions may be, it seems that Antonacci and Ponder did not get along. In May 2012, as we noted, Seyfarth ended Antonacci's employment.

Shortly thereafter, Antonacci hired Major to represent him in his lawsuit against Seyfarth and Ponder. Major was not diligent in pursuing this, Antonacci alleges. Instead, she dragged her feet in filing his complaint. They had shown the complaint to the City's Law Department and had ensured that it did not reveal any confidential information related to Antonacci's earlier work on the Program. A week after the complaint was filed, Attorney Joel Kaplan of Seyfarth called Major and offered to settle the case for $100,000. Antonacci asked Major to counteroffer, but she did not. Instead, Antonacci asserts, she told Kaplan that she would work with Ponder, Seyfarth, and Matthew Gehringer (of Perkins Coie, the firm representing Seyfarth) to sabotage his case. Her motivation? She supposedly believed that she could earn more money from referrals from large law firms than she could from Antonacci.

Antonacci set out a long list of ways in which Major and Gehringer, along with various other people, torpedoed his lawsuit. They delayed things unnecessarily, undermined his efforts to obtain discovery from the City, and ran up his fees. Worse, they conspired with Judge Brewer and the court reporters. On one occasion, he said, they warned Judge Brewer that Antonacci was going to be in her courtroom observing her preside over a *different* case. Because of that warning, she "deliberately appear[ed]

calm and reasonable," and thus thwarted Antonacci's effort to have a different judge assigned to his case. Court reporter Sandy Toomey supposedly falsely certified the accuracy of her transcript of a hearing at which Judge Brewer allegedly screamed, and court reporter Kruse supposedly lied to Antonacci when she said that she filed a transcript from a different hearing. Other allegations included one of a conspiracy between Gehringer and the City's attorneys to cover up evidence of Ponder's misconduct and another of an attorney blacklist on which Judge Brewer allegedly put Antonacci's name. Finally, Gehringer allegedly coordinated an attack on Antonacci's Illinois bar application, by harassing and intimidating members of the character and fitness committee and unduly influencing the inquiry panel. We could go on, but this is enough to illustrate the tenor of the complaint.

The district court, in an order that itself pulled no punches, dismissed the complaint and case before the defendants were served. It rejected Antonacci's RICO claims with the comment that these allegations—that Antonacci had "assertedly been the victim of a massive global conspiracy on the part of what seems to be the entire world with which he comes into contact plainly appear[] to fail—flat out—the 'plausibility' requirement established by the *Twombly-Iqbal* canon." The court also commented on the inadequacy of the diversity allegations. Antonacci had moved back to Washington, D.C., by the time he filed his complaint, but he alleged only his residence, not his citizenship. More importantly, instead of alleging the citizenship of the members or partners of the three defendant law firms (Seyfarth, Perkins Coie, and Neal & Leroy LLC), Antonacci had alleged each firm's state of organization and principal place of business. This is an elementary error, see, *e.g.*, *Americold Realty Trust v. ConAgra Foods, Inc.*, No. 14-1382, 2016 WL 854159 at *3 (U.S. March 7, 2016). It is the citizenship of each member of an LLC or an LLP that must be assessed. *Id.* Importantly, the district court gave Antonacci one last chance to cure the jurisdictional defects it had identified: it gave him 28 days to file an amended complaint, which it promised to consider. Antonacci decided to forgo that opportunity and instead filed his notice of appeal (after which he purported to serve process on the defendants).

Antonacci has asked this court to permit him to fix the jurisdictional deficiencies by permitting a belated amendment to the complaint pursuant to 28 U.S.C. § 1653. He thinks that if he drops Seyfarth as a defendant (a move that would be essential in light of an affidavit from a Seyfarth partner swearing that he is a citizen of the District of Columbia), all his problems would be solved. He complains that he has no way of researching the citizenship of every partner of each defendant firm, and so at a

minimum his case should be remanded for the purpose of jurisdictional discovery. We are not inclined, however, to take this step, because Antonacci's complaint fails to raise anything that is worth salvaging. We explain this conclusion briefly.

First, even though his RICO allegations describe specific actions undertaken by specific defendants on certain dates, it takes more than that to allege a plausible conspiracy. The allegations fall far short of meeting the stringent pleading requirements of a civil RICO claim, which requires among other things an allegation of a pattern of racketeering activity that shows either closed-ended or open-ended continuity. *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472-73 (7th Cir. 2007). Antonacci's complaint comes nowhere close to meeting this standard. He seems to be thinking of a closed-ended pattern, because by now the alleged racketeers have succeeded in both sabotaging his state-court lawsuit and his bar application. But the entire scheme lasted only 21 months, giving Antonacci the benefit of the doubt, and we have repeatedly found that the combination of such a short period with only a single victim of a single scheme is insufficient as a matter of law. *Gamboa v. Velez*, 457 F.3d 703, 709-10 (7th Cir. 2006) (collecting cases). Nothing but sheer speculation would support the hypothesis of open-ended continuity, either.

The difficult question is whether Antonacci's RICO claims are legally frivolous, or if they simply fail to state a claim. In our view, the former is the proper description. While he premises his RICO claims on multiple allegations of fraud, each individual allegation is so unsupported by any plausible detail as to be preposterous. We realize that his complaint does not sink to the level of the one we evaluated in *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000), where the plaintiff thought that the United States and China were reading people's minds and torturing them with a bio-tech device called MATRET. But we did not mean to suggest in *Lee* that only such a level of delusional thinking would meet the *Bell v. Hood* standard. Antonacci has flung wild accusations at a large number of people, but the state courts of Illinois found no merit in them, and we can see no reason to permit him to resuscitate them in the form of this RICO suit.

Finally, as we have noted, diversity jurisdiction is not available to salvage this case. The defendants have shown that the complete diversity required by § 1332 is lacking. That said, defendants are not blame-free on this point. They criticize Antonacci's failure to allege their citizenship properly, but at the same time they have also neglected to do so, and have thus violated Circuit Rule 28(b). That rule requires an appellee to submit a "complete jurisdictional summary" if it believes that the appellant's

jurisdictional statement is not complete and correct. Appellees' failure to follow this rule left Antonacci some room to argue that he deserves a second chance. We have not given him that chance largely because of the affidavit filed by the Seyfarth defendant and his own failure to take advantage of the last-chance opportunity extended by the district court.

Because Antonacci's federal claims are legally frivolous, and because the record shows that diversity of citizenship is lacking, the district court correctly dismissed this case for lack of subject-matter jurisdiction. Its judgment is AFFIRMED.